EZEKIEL FIXMAN, Respondent, *against* GEORGE V. BROWN, Appellant.

(Decided January 3d, 1887.)

The assignee of a claim, after several fruitless attempts to obtain the testimony of the assignor to be used in an action thereon, received a letter from the plaintiff, an attorney whom the assignor had consulted, in consequence of which plaintiff was met by defendant, attorney for the assignee, and arrangements were made for taking the assignor's testimony. The plaintiff conducted the parties to the place of examination, but took no part therein. He afterward brought an action against defendant on an alleged agreement to pay him $100

as compensation for such services. *Held,* that while ordinarily the court on appeal will not reverse a judgment on the testimony alone, if there is sufficient evidence to support it, even though on the whole evidence the court would have arrived at a different conclusion, yet as the compensation demanded was so disproportionate to the services rendered, and the contract insisted upon by plaintiff so unusual, and the evidence to support it palpably insufficient, a judgment in plaintiff's favor should be reversed.

APPEAL from a judgment of the District Court in the City of New York for the Seventh Judicial District.

The facts are stated in the opinion.

*G. V. Brown,* for appellant.

*E. Fixman,* respondent, in person.

PER CURIAM.— [Present, VAN HOESEN and BOOKSTAVER, JJ.] — Ordinarily this court will not reverse a judgment rendered in the court below on the testimony alone, if there is sufficient evidence to support it, even if on the whole evidence we would have arrived at a different conclusion. But in this case the compensation demanded is so disproportioned to the services rendered, and the contract insisted upon by the plaintiff so unusual, that we have deemed it our duty to carefully review the evidence.

From the undisputed facts it appears that the firm of Stone & Healing, being indebted to Loomis & Co., among other things assigned a claim which the first-named firm had against one Johnston to John S. Loomis of Loomis & Co.; that Loomis thereupon commenced an action against Johnston for the amount of the claim; that this was resisted by Johnston; and it was thought necessary to procure the testimony of Stone in support of the claim. To this end various attempts had been made by Mr. Loomis and the defendant, acting as his attorney, to get Stone's evidence, without success. Stone had, however, consulted the plaintiff in relation to the matter, and the latter, on the 9th of June, 1885, wrote Loomis & Co. that Mr. Stone was in New

Fixman *v.* Brown.

York and ready and willing to have his testimony taken. In this letter no hint was given that the plaintiff expected anything for his services. Indeed, Stone, being assignor of the claim, should have been willing and ready to support it whenever required. Plaintiff, however, in his letter said he represented Stone, and all communications intended for Stone should be sent to him.

After several unsuccessful attempts had been made to see plaintiff, the parties to this action met on the 23d of June, 1885, plaintiff, as attorney for Stone, and defendant, as attorney for Loomis. Neither had been acquainted with the other before.

Plaintiff claims that, after assuring defendant that he could get Stone's testimony, he asked how he should be paid, and states the remainder of the conversation as follows:

" You [the defendant] said, I will pay you when the suit is ended. We have a good suit here. I said, that will not do, and I would not render services on these conditions. You said, this is a good case, and I said I could not help that, I would not agree to that; and you said, I will pay you $100 ; will that do ? and I said, that will do."

According to plaintiff's evidence this was the first and only sum mentioned by either as compensation for plaintiff's services, which the case discloses was merely to bring the defendant and the referee to the place where Stone was and being present during the examination, the whole occupying but a few hours of one afternoon.

But for this service, plaintiff would have us believe, the defendant agreed to pay him $100, and also made himself liable for its payment; although he was only acting as attorney for another in a case in which he apparently had no other interest than as attorney, and although his client, as far as appears, was perfectly solvent, and there was no necessity for a personal liability. It is possible that an over-sanguine attorney might make such a contract, but the evidence to support it should be very strong and satisfactory, and stronger than we can find in this case.

As far as we can understand from the evidence, plaintiff's

Fixman *v.* Brown.

version of the agreement is entirely uncorroborated. He claims that Mr. Stoiber's evidence sustains his position, but as we read that evidence it is just as consistent with defendant's version of the agreement as with plaintiff's. The entry in plaintiff's register, " At Stone's house and took his testimony. I am to receive $100," rather weakens than aids his contention, for he himself admitted the words " I am to receive $100 " were in an ink " a little lighter " than the other words, and such an entry in a register is unusual, to say the least.

Plaintiff also claimed that he " conducted the examination principally," but the record as proven on the trial fails to sustain this claim.

He also testified that Mr. Stone had told him his partner had assigned a lot of claims to Loomis & Co. without his, Stone's, knowledge. The case discloses that this was not the fact, but that Stone had signed the assignment. It is scarcely probable that Mr. Stone would thus mislead his attorney when it could be of no service to him.

We also think his testimony in relation to his offering to procure Stone's testimony, before the production of the letter, not wholly ingenuous.

On the other hand, the defendant's version of the agreement is not only probable, but consistent with all the facts in the case. He says the claim against Johnston was for a larger amount than Stone & Healing's debt to Loomis & Co., and that he promised the plaintiff $100 out of the proceeds if the action was successful. In this he is corroborated by Healing's version of an interview between himself and the plaintiff, and this version is in conflict with plaintiff's evidence.

After a careful examination of the case, we think justice would be best subserved by reversing this judgment, as was done in *Macniff* v. *Luddington* (13 Abb. N. Cas. 407).

Judgment reversed and new trial ordered, with costs of this appeal to abide event.